IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 19-315-ESH |
| : | |
| DESHAWN HOOD : | |
| : | |
| Defendant : | |

### SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE SEIZED DURING ILLEGAL STOP

COMES NOW, the Defendant, Deshawn Hood, by and through his attorneys, Michael E. Lawlor, and Nicholas G. Madiou, Brennan, McKenna & Lawlor, Chtd., and hereby respectfully submits this supplemental memorandum of law in support of Mr. Hood's Motion to Suppress evidence seized as a result of his September 16, 2019 stop and arrest. In support of this supplemental memorandum, counsel state the following:

### Mr. Hood Was Seized for Purposes of 4th Amendment Law When He Submitted to a Show of Authority by Two Officers from the Gun Recovery Unit.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As a result, all seizures must "be founded upon reasonable, objective justification." *United States v. Gross*, 784 F.3d 784, 786 (D.C. Cir. 2015) (citation omitted). A seizure under the Fourth Amendment occurs "when physical

1

force is used to restrain movement *or* when a person submits to an officer's 'show of authority.'" *United States v. Brodie*, 742 F.3d 1058, 1061 (D.C. Cir. 2014 (*quoting California v. Hodari D.,* 499 U.S. 621, 626 (1991)) (emphasis added).

In determining whether a seizure under the Fourth Amendment has occurred, this Court should look to whether a reasonable person in view of all the circumstances surrounding the incident would have believed that he was not free to leave. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Courts have concluded that "[e]xamples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.*; *see also United States v. Goddard*, 491 F.3d 457, 460 (D.C. Cir. 2007) ("[W]e [also] consider the demeanor of the approaching officer, whether the officer ... wore a uniform, and the time and place of the encounter.") (internal quotation marks and citations omitted).

While officers are permitted to simply approach individuals on the street without any basis for suspicion, pose questions, ask for identification, and request consent to search, such questions rise to the level of a Fourth Amendment seizure when law enforcement "'convey[s] a message that compliance with their requests is required.'" *Gross*, 784 F.3d at 787 (*quoting Florida v. Bostick*, 501 U.S. 429, 435

(1991)). Such contact by police also rises to a seizure if law enforcement otherwise "induce[s] cooperation by coercive means." *See United States v. Drayton*, 536 U.S. 194, 201 (2002). This Court should look to the statements made by the officers, in addition to the surrounding circumstances, when determining whether compliance appeared to be required in this case. Courts have routinely found that telling an individual to stop, or to hold up amounts to a seizure under Fourth Amendment law. *See, e.g.*, *United States v. Castle*, 825 F.3d 625, 633 (D.C. Cir. 2016) (finding seizure where an officer instructed the defendant to remove his hands from his pockets and to "hold on," while blocking the defendant's path); *United States v. Wood*, 981 F.2d 536 (D.C. Cir. 1992) (finding seizure where a uniformed officer, blocking the defendant's path, ordered the defendant to "halt right there" and "stop"); *United States v. Jones*, 142 F. Supp. 3d 49, 54, 59 (D.D.C. 2015) (finding seizure where Gun Recovery Unit officers exited their vehicle and attempted to keep the defendant from departing by stating, "I need to talk to you for a second, you need to stop").

In this case, Mr. Hood was walking in a residential neighborhood, across the street from his own home. After having an exchange with officers in one vehicle, and turning down Foote street, Mr. Hood was approached by a second police vehicle. Two officers, Torres and Jacobs, exited the vehicle, in Mr. Hood's path. Mr. Hood was still walking towards his home and only stopped and submitted to the seizure of his person when officer Jacobs, exiting his car in a vest indicating "POLICE," told

him to "hold on." Officer Jacobs had his hand up (indicated to Hood that he should stop) and Officer Torres shined a flashlight on Mr. Hood's person. This event occurred at 11:30 in the evening with no other cars or pedestrians in the vicinity. It is clear that at that moment, prior to the officers seeing any "bulge" in Mr. Hood's pants, Mr. Hood had been seized.

It is also clear that at that moment, which is prior to the time when Officer Jacobs indicated he observed the "bulge" in Mr. Hood's pants, officers lacked any reasonable, articulable suspicion that Mr. Hood was engaged in criminal activity. What Officer Jacobs observed about Mr. Hood at this point, were completely benign circumstances that suggested nothing criminal. "[I]n assessing a trial court's reasonableness determination, it is critical that we also keep in mind the Supreme Court's admonition that "due weight must be given, not to [an officer's] inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Castle*, 825 F.3d at 632 (quoting *Terry*, 392 U.S. at 27).

Here, the officers lacked reasonable, articulable suspicion at the time Mr. Hood was seized.  The Court should therefore grant his Motion to Suppress.

Respectfully submitted,

/s/
_____
Michael E. Lawlor, Esquire
Nicholas G. Madiou, Esquire
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
301.474.0044
mlawlor@verizon.net
nickmadiou@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 14, 2020, a copy of the foregoing was sent to the United States Attorney's Office for the District of Columbia, via ECF.

/s/
_____
Michael E. Lawlor